# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| THOMAS FRANCHINI, D.P.M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 1:18-cv-00477-GZS |
| | ) |
| SALLY PIPES et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTIONS TO DISMISS

Before the Court are two Motions to Dismiss. The first (ECF No. 16), filed by Defendant Philadelphia Media Network, PBC ("PMN"), seeks dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The second (ECF No. 17), filed by Defendants Pacific Research Institute ("PRI") and Sally Pipes, seeks dismissal for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(2) & 12(b)(6). It also seeks dismissal under the anti-SLAPP statutes of Maine and California. 14 M.R.S.A. § 556; Cal. Civ. Proc. Code § 425.16. As explained herein, the Court GRANTS both Motions on personal jurisdiction grounds.

### I. LEGAL STANDARD

"When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction lies in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). There are three recognized standards for determining whether the exercise of personal jurisdiction is lawful: the prima facie standard, the preponderance standard, and the likelihood standard. Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); see Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-147 (1st Cir. 1998) (outlining standards and

circumstances under which they apply). "The prima facie standard is the most commonly used and is appropriate where" as here, "a case does not involve materially conflicting versions of the facts." Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc., 901 F. Supp. 2d 255, 260 (D. Mass. 2012) (citing Foster-Miller, Inc., 46 F.3d at 145-146)).

Under this standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008). "It is not enough for [the plaintiff] to rely on unsupported allegations in [its] pleadings. Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (internal citations and quotations omitted). In assessing this showing, the court must accept "properly documented" proffers as true and "construe them in the light most congenial" to the plaintiff. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal citations and quotations omitted).

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). "Because the Law Court has deemed Maine's long-arm statute coextensive with the permissible exercise of personal jurisdiction under the Due Process Clause . . . the due process inquiry controls in the present case." Lucerne Farms v. Baling Techs., Inc., 226 F. Supp. 2d 255, 257 (D. Me. 2002).

**II.     FACTUAL BACKGROUND**

Plaintiff Thomas Franchini is a board-certified podiatrist who resides in Connecticut. He is licensed to practice podiatry in Connecticut, Rhode Island, New York, and Massachusetts, and has expired licenses in good standing in the District of Columbia, Vermont, and Maine. Defendant

PMN is a company organized and based in Pennsylvania, and which publishes *The Philadelphia Inquirer* and Philly.com. Defendant PRI is a non-profit corporation organized and based in California, and Defendant Sally Pipes is an employee of PRI who resides in California.

From 2004 to 2010, Franchini worked as a podiatrist with the Department of Veterans Affairs at the VA Maine Healthcare System at Togus, in Augusta, Maine ("VA Togus"). Around April 2010, VA Togus reviewed Franchini's note-taking and preparation of medical records, criticized him for "the brevity of his procedure notes," and asked him to cease performing surgeries. (Compl. (ECF No. 1), PageID # 5.) On November 8, 2010, Franchini resigned from VA Togus. Then, after 2012, VA Togus and its representatives accused Franchini of numerous cases of substandard performance of procedures. Franchini maintains that those allegations are baseless and false. On or about November 10, 2017, PMN published an opinion article by Pipes entitled "The VA is a National Embarrassment, Not a Model to Emulate." (Id. at PageID # 6.) According to Franchini, that article makes numerous false statements about his time at VA Togus, including that he "botched" procedures, and provides hyperlinks to two articles—one in *USAToday* and one in the *Portland Press Herald*—that make similar false claims. (Id.) On or about November 13, 2017, PRI published an article by Pipes also entitled "The VA is a National Embarrassment, Not a Model to Emulate." (Id. at PageID # 10.) By Franchini's account, that article is "identical" to the PMN article down to the hyperlinks. (Id.)

The PMN article begins by discussing dysfunction at the VA in general.[1] It then raises Franchini as an example and, as Franchini alleges, states that he "botched" certain surgeries while

---

[1] Franchini proffered a copy of the PMN article as an attachment to his Opposition to Defendants' Motions. See Ex. A to Pl. Opp. (ECF No. 20), PageID #s 141-142. Plaintiff also attached a declaration by Pipes, which authenticates the proffered PMN article based on Pipes' personal knowledge. Ex. B to Pl. Opp. (ECF No. 20), PageID # 144; see Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 674 (1st Cir. 1992) (noting that Rule 12(b)(2) proceedings "may involve proffers of evidence" by, among other things, "affidavits" and "authenticated documents"). Franchini has not attached a copy of the PRI article.

working for the VA. (Ex. A to Pl. Opp. (ECF No. 20), PageID # 142.) After that, the article concludes with further criticism of the VA and the author's opinion on a "single-payer" healthcare system. (Id.) The PMN article contains embedded links to a *USAToday* article and a *Portland Press Herald* article, which Pipes used as sources for the PMN article. (Pipes Decl. (ECF No. 17-1), PageID #s 77-78.) PMN published the PMN article not only in Philly.com, but also in print in the *Philadelphia Inquirer* on November 12, 2017. (Loomis Decl. (ECF No. 22-1), PageID # 199.) On that day, the *Philadelphia Inquirer* had one hard copy subscriber in Maine and forty-one Maine electronic subscribers. Of those electronic subscribers who received a digital replica of the November 12 publication, nine viewed the page containing the article. Also, 529 unique visitors viewed the article on Philly.com and eight of those were from Maine.[2]

## III.   DISCUSSION

Plaintiff does not contend that any of the Defendants are subject to general personal jurisdiction in Maine and, therefore, the Court need not address that type of jurisdiction. See Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). Rather, Franchini asserts only that they are subject to specific personal jurisdiction, "i.e., jurisdiction over these defendants for the purpose of this specific lawsuit." Id. To establish such jurisdiction, a plaintiff "must show that: (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state . . . ; and (3) the exercise of jurisdiction is

---

[2] These facts regarding PMN's distribution of Pipes' article are proffered by PMN via the Declaration of Mark Loomis, PMN's Director of Analytics. See Ex. A to PMN Rep. (ECF No. 22-1), PageID #s 199-200. This proffer was made in response to Franchini's argument that he should be permitted an opportunity for jurisdictional discovery "from PMN" regarding the number and geographical location of "hits" on the PMN article. Pl. Opp. (ECF No. 20), PageID # 117. Thus, PMN has provided the information that Franchini expressed an interest in securing, and Franchini has not "specif[ied] any additional pertinent avenues of inquiry." Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973). Under these circumstances, the Court concludes that further jurisdictional discovery is unnecessary. See United States v. Swiss Am. Bank, Ltd., 247 F.3d 610, 626 (1st Cir. 2001) (noting that trial courts have "broad discretion in determining whether to grant jurisdictional discovery").

ultimately reasonable." Id. In cases involving multiple defendants, "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). Here, Defendants all contend that Franchini has failed to meet his burden on personal jurisdiction.

### A. Relatedness

To satisfy the relatedness prong, "the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389. "Here, plaintiff['s] claims all sound in tort, so to assess relatedness" the Court looks to whether "the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Scottsdale Capital Advisors Corp., 887 F.3d at 20-21 (internal citations and quotations omitted). Specifically, Plaintiff raises two defamation claims: one against PMN and Pipes for the PMN article (Count I), and one against PRI and Pipes for the PRI article (Count II).[3]

In Maine, the tort of defamation requires the plaintiff to demonstrate, among other things, that the defendant communicated the allegedly defamatory material to a third party. Lester v. Powers, 596 A.2d 65, 69 (1991) (citing Restatement (Second) of Torts § 558). Thus, to establish "cause in fact" and "legal cause" here, i.e. the requisite nexus between the defamation claims and the defendant's forum-based activities, Plaintiff must proffer some evidence permitting the inference that the defamatory material reached a third party in the forum. See Scottsdale Capital Advisors Corp., 887 F.3d at 19-22 (finding no personal jurisdiction over defendants in a defamation case where third parties in the forum had access to an allegedly defamatory article

---

[3] Although Franchini also raises a claim of negligent infliction of emotional distress ("NIED") (Count III), that claim is based on the publication of the allegedly defamatory material and, therefore, is subsumed into the defamation claims. See Veilleux v. Nat'l Broad. Co., 206 F.3d 92, 129 (1st Cir. 2000) (noting that "under Maine law" NIED cannot be premised on the alleged publication of defamatory content); see also Scottsdale Capital Advisors Corp., 887 F.3d at 21 (explaining that "[e]ach tort as alleged in this case relies on the allegation that defendants published defamatory material, so for the purpose of defining plaintiffs' injury, we can simply describe the cause of action as one for defamation").

5

through an online subscriber portal and two of those parties received the article as an email attachment, but evidence showed that no one viewed the article on the portal and court concluded that number of emails did not permit an inference that either recipient opened attachment).

As to Count II, Franchini has proffered no evidence regarding the PRI article at all, let alone evidence permitting a reasonable inference that a third party in Maine ever "apprehended" that article. Id. at 22. Therefore, Franchini's claim for defamation against PRI and Pipes based on the PRI article cannot be said to "directly arise out of" either of these Defendants' contacts with Maine. Sawtelle, 70 F.3d at 1389

As to Count I, Plaintiff's defamation claim, as pled, is based on the version of the PMN article published on Philly.com. However, for purposes of resolving the pending jurisdictional question, the Court construes Count I as referring to both the online and print versions.[4] The record indicates that PMN sent a print copy of the PMN article to one subscriber in Maine, emailed a digital replica of the print version to forty-one Maine electronic subscribers, and that nine of those electronic subscribers viewed the page containing the article. By sending this information to the subscribing residents of Maine, PMN engaged in "contacts with the forum." Sawtelle, 70 F.3d at 1389; see Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 36 (1998) (noting that "[t]he transmission of facts or information into [the forum state] via . . . mail would of course constitute evidence of a jurisdictional contact directed into the forum state"). Those contacts amounted to the "cause in fact" and "legal cause" of Franchini's alleged injury in Maine. Mass. Sch. of Law at Andover, Inc., 142 F.3d at 35 (internal citations and quotations omitted). Thus, as

---

[4] Given the information proffered by PMN, which Franchini has not had a chance to incorporate into his filings, the Court concludes that if it did not construe the Complaint in this way, "justice" would "require" leave to amend the Complaint. Fed. R. Civ. P. 15(a)(2).

construed by the Court, Count I "directly arise[s]" from PMN's "specific contacts" with Maine and Franchini satisfies the relatedness prong on Count I as to PMN. Sawtelle, 70 F.3d at 1389.

It is much less clear to the Court that PMN's publication of the PMN article in Maine can be considered a jurisdictional "contact" with the forum by Pipes. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001) (explaining that "there can be no requisite nexus between the contacts and the cause of action if no contacts exist"). However, the Court need not delve into this murky issue because, as it explains in the next section, Franchini has not shown that Pipes purposefully availed herself of Maine.

### B. Purposeful Availment

On this prong, Franchini contends that all three Defendants purposefully availed themselves of Maine under the "effects" test articulated by the Supreme Court in Calder v. Jones. 465 U.S. at 788-790. In that case, a reporter and editor for the *National Enquirer*, acting in Florida, composed an allegedly defamatory article about the California conduct of a professional actress who lived and worked in California. The *Enquirer* then published the article in an issue of its magazine and sold over 600,000 copies in California. The Court held that California had specific personal jurisdiction over the reporter and editor because "their intentional, and allegedly tortious, actions were expressly aimed at California" and "they knew that the brunt of [the] injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." Id. at 789, 790.

Franchini argues that PMN, PRI, and Pipes targeted Maine through the articles and knew that Franchini would feel the brunt of the harm in Maine. Specifically, he points out that: (1) the hyperlinks contained in the PMN article demonstrate intentional targeting of Maine because they connect to other articles that make similar allegations about Franchini and indicate that his actions

7

occurred in Maine; and (2) Maine is the "focal point" of both articles because they focus on the forum state conduct of an individual who, at the time of the conduct, was a Maine resident. (Pl. Opp. (ECF No. 20), PageID # 14.)

Initially, Franchini has failed to satisfy the purposeful availment prong as to either PRI or Pipes by way of the PRI article. Franchini has not proffered the PRI article or cited any evidence, beyond "unsupported allegations" in the Complaint, as to that article's substance, medium of publication, or circulation. A Corp., 812 F.3d at 58. Thus, on the record before it, the Court cannot conclude that PRI or Pipes "expressly aimed" the PRI article at Maine or knew that it would cause Franchini injury here. Calder, 465 U.S. at 789.

Likewise, the record does not reflect that PMN or Pipes purposefully availed themselves of Maine through the PMN article under the "effects" test. Calder, 465 U.S. at 788-790. First, the evidence does not demonstrate that either Defendant "expressly aimed" the article at Maine. Id. at 789. Though the PMN article articulates certain allegations about Franchini's actions while he was employed by the VA, it does so in the context of a discussion about systemic problems at the VA and does not mention Maine or even VA Togus. This suggests that PMN and Pipes directed the article at a national audience, not a Maine one.[5] See Noonan v. Winston Co., 135 F.3d 85, 91 (1st Cir. 1998) (finding French language of advertisement suggested that defendant directed advertisement at French, rather than Massachusetts, audience); Gentle Wind Project v. Garvey, No. 04-103-P-C, 2005 WL 40064, at *7 (D. Me. Jan. 10, 2005) (rec. dec., aff'd Feb. 16, 2005) (noting that criticism of defendant that "inferentially" refers to Maine because defendant conducts

---

[5] The mere inclusion of links to a *USAToday* article and a *Portland Press Herald* article in the Philly.com version of the PMN article does not indicate an intent to target any specific audience, much less a Maine one. Those links point *any* reader to the PMN article's source material. Moreover, the fact that those sources identify Maine as the location of Franchini's alleged misconduct does not change the focal point of the PMN article or suggest that PMN and Pipes intended to target Maine by linking to them. See Gentle Wind Project v. Garvey, No. 04-103-P-C, 2005 WL 40064, at *7 (D. Me. Jan. 10, 2005) (rec. dec., aff'd Feb. 16, 2005) (refusing to find purposeful targeting of forum merely because online publisher's criticism of defendant happened to mention forum).

many of its activities there is not necessarily "directed at" Maine); see also Young v. New Haven Advocate, 315 F.3d 256, 263-264 (4th Cir. 2002) (finding that even though article discussed plaintiff and harsh conditions at his Virginia prison, "focal point" of article was Connecticut because article focused on "Connecticut prisoner transfer policy").

The PMN article's circulation also fails to demonstrate intent to target Maine. "Just as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact." Noonan, 135 F.3d at 91. Here, PMN circulated one print version of the PMN article in Maine and sent forty-one digital copies to Maine electronic subscribers. Such meager distribution is not enough to satisfy this first part of the Calder inquiry. See id. (noting that distribution of 305 magazines "by itself, does not merit a finding that . . . [defendant] aimed the advertisements toward" the forum). The record also does not permit an inference that Pipes was aware of PMN's Maine circulation, further impeding a conclusion that she intended to target Maine. See id. (finding defendants did not direct actions toward forum in part because plaintiff failed to contradict evidence that defendants were unaware of in-forum circulation).

Second, the record does not support a finding that PMN or Pipes "knew" Franchini would feel the "brunt" of any alleged harm in Maine. Calder, 465 U.S. at 789. Even assuming that PMN and Pipes believed Franchini's reputation might suffer in Maine given their awareness of his history there, the record still does not allow the inference that they had reason to think he would feel the "brunt" of the harm in this forum. Id. In Calder, the defendants knew that California would be the locus of the plaintiff's harm because, at the time of their actions, not only did the plaintiff live and work in that state, but also the *National Inquirer* had its biggest circulation there. Here, by contrast, there is no evidence that Franchini lived or worked in Maine at the time PMN published the PMN article—let alone as to where PMN and Pipes thought he lived—and the record

shows that PMN's circulation in Maine was meager.[6] Thus, Franchini falls short of the requisite showing on the injurious effects portion of the Calder inquiry. Id. at 789-790.

In sum, as PMN and Pipes neither focused the PMN article on Maine, nor had reason to think Franchini would feel the "brunt" of the harm there, the Court cannot conclude that the story was "calculated" to cause harm in Maine. Id. at 789, 791. This precludes a finding of purposeful availment as to either PMN or Pipes.[7]

Ultimately, a plaintiff's failure to make any of the three specific personal jurisdiction showings "dooms any effort to establish" such jurisdiction. Scottsdale Capital Advisors Corp., 887 F.3d at 20. Having concluded that Plaintiff has not demonstrated relatedness or purposeful availment by PRI and that he has failed to show purposeful availment by PMN or Pipes, the Court lacks specific personal jurisdiction over the named Defendants in this action.[8]

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS PMN's Motion (ECF No. 16). The Court also GRANTS IN PART the Motion by PRI and Pipes (ECF No. 17) to the extent it seeks dismissal for

---

[6] The Court notes that Franchini proffered three declarations from Maine-based physicians with his Opposition. See Exs. G, H, I to Pl. Opp. (ECF No. 20), PageID #s 170-180. These declarations allege that the *USAToday* and *Portland Press Herald* articles injured Franchini's reputation in Maine. Even accepting the declarations as true, they do not demonstrate that PMN or Pipes had reason to know, at the time of publication, that *the PMN article* would harm Franchini primarily in Maine.

[7] The Court additionally notes that PMN's in-forum circulation is factually distinguishable from that at issue in Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984). In Keeton, the Supreme Court found that the defendant's monthly circulation of 10,000 to 15,000 magazines in the forum conferred personal jurisdiction in a libel case. In so holding, the Court explained that regular monthly sales of thousands of magazines could not be considered "random, isolated, or fortuitous" and that "[t]here is no unfairness" in forcing a publisher to answer for the contents of its publication where it sells a "substantial number of copies." Id. at 774, 781. On the current record, PMN does not have a similar "substantial" circulation in this forum. Keeton, 465 U.S. at 781; see Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 426 (5th Cir. 2005) (finding no specific personal jurisdiction under Keeton where defendant distributed only seventy magazine issues per week in forum state); Chaiken v. VV Pub. Corp., 119 F.3d 1018, 1029 (2d Cir. 1997) (finding in-forum distribution of "four copies per day, or even the 183 copies of the Sunday edition" inadequate to confer specific personal jurisdiction under Keeton).

[8] As the Court concludes that it lacks specific personal jurisdiction on these grounds, it need not proceed to the reasonableness analysis. Swiss Am. Bank, Ltd., 274 F.3d at 625.

lack of personal jurisdiction.  Accordingly, the Court states no opinion on the merits of PRI and Pipes' alternative arguments for dismissal.  In light of these rulings, the case shall be DISMISSED as to all Defendants.

      SO ORDERED.

                                              /s/ George Z. Singal
                                              United States District Judge

Dated this 17th day of May, 2019.